UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX PRIETO, | NO. CV 08-2696-CT |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant sentence four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

SUMMARY OF PROCEEDINGS

On April 24, 2008, Felix Prieto ("plaintiff") filed a complaint in this action seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties consented to proceed before the magistrate judge. On July 22, 2008, plaintiff filed a brief in support of the complaint. On August 25, 2008, the Commissioner filed a brief in opposition. On August 29, 2008, plaintiff filed a reply.

SUMMARY OF ADMINISTRATIVE RECORD

1. Proceedings

On September 9, 2006, plaintiff filed an application for disability insurance benefits, alleging disability due to a broken leg and back pain. (TR 44-51, 55, 68, 72).[1] He alleges that his disability began on August 12, 2005.[2] (TR 44). The application was denied at the initial level. (TR 36).

Plaintiff filed a request for a hearing before an administrative law judge ("ALJ") and on March 16, 2007, plaintiff, represented by an attorney, appeared and testified through an interpreter. (TR 133-52). On July 26, 2007, the ALJ issued a decision that plaintiff was not disabled as defined by the Act because plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work, which enabled him to perform his past relevant work. (TR 23-28).

On February 28, 2008, the Social Security Appeals Council denied plaintiff's request to review the ALJ's decision. (TR 5). Accordingly, the ALJ's decision is the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

2. Summary Of The Evidence

The ALJ's July 26, 2007 decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

[2] In his Disability Report, he stated that his disability started on August 12, 2004. (TR 64, 72). However, at the hearing the ALJ confirmed that his application had an alleged onset date of August 12, 2005. (TR 140).

the evidence in the case.

## PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1. The ALJ failed to properly consider plaintiff's testimony;
2. The ALJ improperly rejected the assessment of plaintiff's treating physician, Dr. Joseph A. Carella;
3. The ALJ failed to provide an adequate rationale for his finding regarding plaintiff's RFC; and,
4. The vocational evidence supports a finding that plaintiff's past relevant work was at the heavy exertional level.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995).

The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision.

McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

DISCUSSION

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform

4

other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. § 404.1520; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

2. <u>Issues</u>

   A. <u>Plaintiff's Testimony</u>

Plaintiff asserts that the ALJ failed to give proper reasons for discounting the credibility of his testimony concerning his allegations regarding his pain and symptoms.

To reject a plaintiff's subjective complaints, the ALJ "must provide cogent reasons for the disbelief." <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)(citation omitted). In the absence of evidence of malingering, the ALJ's reasons for rejecting plaintiff's testimony "must be clear and convincing." <u>Id.</u> (citation omitted). Moreover, when an ALJ "finds that a [plaintiff's] testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)(citation omitted). In making a credibility determination the ALJ "must specifically identify what testimony is credible and what testimony undermines the [plaintiff's] complaints." <u>Id.</u> (citations omitted). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002)(citation omitted).

In finding plaintiff's allegations of disabling pain and limitations less than fully credible, the ALJ met these requirements and his reasons were supported by substantial evidence. For example, the ALJ found that plaintiff's allegations of markedly limiting pain were

inconsistent with the fact that plaintiff was not taking pain medications stronger than aspirin and Naproxen. (TR 27, 74, 96). Evidence of conservative medical treatment is a proper reason for discounting a plaintiff's allegations of disabling pain or limitations. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).

The ALJ also noted that plaintiff claimed to have stopped working in April of June of 2003 "not because of his physical condition, but because his place of employment shut down." (TR 27). Although plaintiff claimed that he looked for work after the plant closure (TR 27-28), he did not work again despite the fact that, according to his own allegations, he did not become disabled until August of 2005. Plaintiff's work history and evidence of lack of motivation to work are factors that the ALJ can consider in evaluating the credibility of plaintiff's allegations. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.2002) (ALJ's finding plaintiff had "extremely poor work history" and showed "little propensity to work in her lifetime" was one of the clear and convincing factors supporting negative credibility determination); 20 C.F.R. § 416.929(c)(3) (in assessing symptoms such as pain, fact-finder "will consider all of the evidence presented, including information about [plaintiff's] prior work record....").

Finally, the ALJ found plaintiff's testimony that he had not worked after his alleged onset date "doubtful." (TR 27). Plaintiff testified that he stopped working in 2003. However, his earnings report from 2005 showed earnings of over $79,000. When questioned about this, plaintiff claimed that he and his wife filed a joint tax return and that all the earnings were from his wife's job, but admitted that he assisted

his wife in her business by running some errands for an hour a day. (TR 139-40). Plaintiff submitted no evidence that the entire $79,000 were his wife's earnings and the ALJ's conclusion that the 2005 earnings report cast doubt on plaintiff's claim that he had not worked at all since the alleged onset of disability was a reasonable interpretation of the evidence.

The ALJ's credibility determination was free from material legal error and supported by substantial evidence. Accordingly, remand is not warranted on this issue.

B.  Treating Physician's Opinion

Plaintiff also claims error in the ALJ's rejection of the functional assessment of his treating physician, Dr. Joseph Carella.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews v. Shalala, 53 F.3d at 1041 (citation omitted). However, to reject the uncontroverted opinion of plaintiff's physician, the ALJ must present clear and convincing reasons for doing so. Id. If the treating physician's opinion is contradicted by other doctors, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so that are supported by substantial evidence. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citation omitted). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings.'" Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

Dr. Carella submitted a medical assessment of plaintiff's ability to perform work functions on February 14 2007. (TR 107-11). He

7

essentially found that plaintiff could not perform full-time work even at the sedentary level. (TR 110). The ALJ rejected Dr. Carella's opinions concerning plaintiff's functional limitations because Dr. Carella seemed to "uncritically endorse [plaintiff's] subjective complaints." (TR 27).

As evidence of this, the ALJ found that Dr. Carella's opinion that plaintiff was precluded from engaging in manipulative activities was not supported by the medical evidence of record. This finding is supported by substantial evidence. Dr. Carella opined that plaintiff could never perform handling and feeling functions, but the sole medical evidence cited in support of this assessment is degenerative disease in plaintiff's *lumbar* spine. (TR 109). Later in his report Dr. Carella noted finding unspecified decreases in the strength of plaintiff's upper extremities, but, based on those findings, opined that plaintiff could frequently engage in simple grasping and occasionally use fine manipulation. (TR 110). In addition, February 2007 MRIs of plaintiff's cervical spine showed a disc bulge at C5-C6, but no significant evidence of nerve impact. (TR 112-13). Lack of support for a doctor's opinions in plaintiff's medical records is a proper reason for discrediting those opinions. Tommasetti v. Astrue, 533 F.3d at 1041 (incongruity between doctor's questionnaire responses and plaintiff's medical records was a specific and legitimate reason for rejecting the doctor's opinion of plaintiff's limitations).

The ALJ's consideration of Dr. Carella's assessment of plaintiff's limitations is free from material legal error and supported by substantial evidence.

C. Residual Functional Capacity (Issue 3)

8

Plaintiff contends that the ALJ's assessment of plaintiff's RFC was unreliable and failed to consider all the evidence of record.

The RFC is the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545. In assessing a plaintiff's RFC, the Commissioner considers all relevant evidence, including medical evidence and plaintiff's testimony. Id.

Here, the ALJ found that plaintiff could perform the full range of medium work. In making this finding, the ALJ adopted the assessment of consultative examiner, Dr. Rocely Ella-Tomayo. Dr. Ella-Tomayo reviewed plaintiff's 2002 magnetic resonance imaging study ("MRI") of the lumbar spine, which revealed diffuse disc bulges measuring 2-3 millimeters at L3-L4 and L4-L5. (TR 87-88, 96). Dr. Ella-Tomayo's muskuloskeletal and neurological examination of plaintiff was essentially normal, although plaintiff had difficulty bending down to take off his shoes and socks and complained of pain when lying down, sitting up, and getting up after bending over. (TR 98).

In February of 2007, additional MRI studies of plaintiff's cervical and lumbar spine were performed. These MRI studies showed discogenic disease at L4-L5 and L5-S1 of the lumbar spine and spinal stenosis. (TR 113, 125). In addition, in contrast to what Dr. Ella-Tomayo found in 2005, Dr. Carella's examination revealed some neurological findings in plaintiff's lower extremities. (TR 110). Although the ALJ properly rejected Dr. Carella's conclusions as to plaintiff's limitations, the ALJ failed to mention these findings. This evidence indicates that plaintiff's condition changed since he was examined by the consultative examiner and that further development of the record was required before

the ALJ adopted the consultative examiner's RFC. See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144 1150 (9th Cir. 2001)(ALJ has a special duty to fully and fairly develop the record even where plaintiff is represented by counsel). Moreover, in rendering his decision, the ALJ did not have the benefit of a July 7, 2007 nerve conduction study, which was submitted before the decision was issued (but after the record was closed) and was not referenced in the ALJ's decision, although it was considered by the Appeals Council.[3] (<u>See</u> TR 128-29).

Accordingly, remand is warranted on this issue.

D.  <u>Past Relevant Work</u>

Plaintiff contends that the ALJ erroneously found that his past relevant work as a battery unloader was at the medium exertional level, when it is actually at the heavy exertional level. Plaintiff also contends that the ALJ improperly classified his past relevant work under the wrong Dictionary of Occupational Titles ("DOT") job titles.

At step four, plaintiff bears the burden of showing that he does not have the RFC to engage in his past relevant work. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 516 (9th Cir. 2001) (citing 20 C.F.R. § 416.920(e)). More specifically, plaintiff must prove "an inability to return to

---

[3] Plaintiff relies on this study to support his arguments for remand. However, the study was not submitted until after the record before the ALJ was closed. The Appeals Council considered the new evidence, but declined to review the ALJ's decision. (TR 5-6). To justify a remand based on new evidence, plaintiff must show good cause for failing to submit the evidence earlier and that the evidence is material. <u>Mayes v. Massanari</u>, 275 F.3d 453, 462 (9th Cir. 2001). Plaintiff has not made a good cause showing. However, in this case, remand is required even without the nerve conduction study because the ALJ failed to properly develop the record concerning the impact of the changes in plaintiff's lumbar spine.

1  [plaintiff's] former <u>type</u> of work and not just [plaintiff's] former
2  job." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986); see also
3  20 C.F.R. § 404.1520(e).

4  In order to determine whether the plaintiff has the RFC to perform
5  plaintiff's past work, the Commissioner must ascertain the demands of
6  plaintiff's former work, and then compare those work demands with
7  plaintiff's capacity. Villa v. Heckler, 797 F.2d at 797-98. The
8  Commissioner may rely on the general job categories of the Dictionary of
9  Occupational Titles ("DOT") as presumptively applicable to plaintiff's
10 past relevant work. Villa v. Heckler, 797 F.2d at 798; 20 C.F.R. §
11 404.1566(d). A plaintiff can rebut this presumption by showing that the
12 duties in his or her line of work are not those envisaged by the
13 drafters of the applicable DOT category. Villa v. Heckler, 797 F.2d at
14 798. If the ALJ has incorrectly categorized plaintiff's prior
15 occupation under a general DOT job category, then the description
16 applicable to that category is irrelevant to the determination of the
17 exertional capacities required by his former occupation. Id.

18 Here, the ALJ found that plaintiff was able to perform medium work
19 and therefore could perform his past relevant work, which the ALJ
20 described as involving loading and assembling of batteries. The ALJ did
21 not indicate whether he found that plaintiff could perform his past
22 relevant work as actually performed or a generally performed. Instead,
23 he noted that the DOT job of "battery assembler" is light and semi-
24 skilled and the DOT job category of "warehouse worker" is medium,
25 unskilled work. (TR 28). He further stated that plaintiff described
26 his past work as "essentially consistent with medium work." (Id.)
27 Plaintiff described his past work as heavy work, not medium work.
28

11

1  (See TR 148-49). Accordingly, the ALJ erred in determining that
2  plaintiff could preform his past relevant work as actually performed.
3  In addition, plaintiff testified that he did not assemble batteries.
4  (TR 149). Instead, he loaded and unloaded automobile and truck
5  batteries onto carts and then stacked them in aisles. (TR 147-48).
6  Accordingly, the ALJ improperly classified plaintiff's past work as a
7  "battery assembler." (See DOT No. 727.684-010 (Battery Assembler)).

8      With respect to the warehouse worker job, the ALJ cited DOT job
9  number 922.687-058 ("Laborer, Stores"). This job is performed at the
10 medium exertional level. The description of job duties for the
11 warehouse worker job essentially entails moving and retrieving generic
12 stock from a warehouse. At the hearing, plaintiff's counsel argued that
13 plaintiff was "just a warehouse worker" when attempting to distinguish
14 his past work from a battery assembler job. (TR 151). However,
15 plaintiff contends that his automobile battery unloader job includes
16 lifting 100 pound truck batteries. Because the ALJ erroneously
17 concluded that plaintiff's past work as a battery loader was medium
18 work, the ALJ made no specific findings as to whether the duties of the
19 battery unloader job are distinct from those described in the DOT
20 warehouse worker category and did not call a vocational expert to
21 testify concerning this issue.[4] See Villa v. Heckler, 797 F.2d at 798-99

---

[4] In his opposition brief, the Commissioner essentially concedes that plaintiff's past battery loader job was improperly classified, stating that "[b]ased on plaintiff's testimoy, it appears that the job that more closely fits with his description of his past relevant work is Battery Stacker [DOT No. 727.687-030]," which is performed at the medium exertional level. (Def. Brief at 10). However, in the administrative proceedings, the ALJ did not base his decision on his current contention that petitioner's past relevant work falls into the battery stacker

(where plaintiff contended that his job duties were different than those of the generic DOT job identified and record contained no finding by the Commissioner as to whether the duties of plaintiff's prior job were sufficiently distinct from the duties described in the DOT category to constitute a different line of work, remand for further findings was warranted).

Remand is warranted on this issue. Since this matter is already being remanded, the Commissioner will have an opportunity to conduct the step four inquiry again and should make the required findings necessary to do so. If appropriate, the Commissioner may want to obtain the assistance of a vocational expert.

## REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the present record is insufficiently developed.

## CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to

//

//

---

category and this court cannot affirm the Commissioner's decision on a ground not invoked by the Commissioner in rendering his original decision. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)(citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: Aug. 3, 2008

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Felix Prieto | Period of Disability and Disability Insurance Benefits |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On September 8, 2005, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 12, 2005. The claim was denied initially on February 3, 2006. Thereafter, the claimant filed a timely written request for hearing on March 31, 2006 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on March 16, 2007, in Downey, California. The claimant testified with the assistance of a Spanish interpreter. Troy Monge, Attorney at Law, represented the claimant at the hearing.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2009. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant has not been under a disability within the meaning of the Social Security Act from August 12, 2005 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

See Next Page



claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and

See Next Page



404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.**

**2. The claimant has not engaged in substantial gainful activity since August 12, 2005, his alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

**3. The claimant has had the following severe impairments: degenerative disc disease; hypertension; and obesity (20 CFR 404.1520(c)).**

The record includes the report of a December 2005 internal medicine consultative examination which shows the claimant's height and weight as 68 inches and 216 pounds. In addition, his blood pressure is shown as 180/96. On the other hand, the report indicates that he retains a normal gait and a normal range of motion. And no neurological abnormality is indicated (Exhibit 2F).

More recently, a February 2007 MRI examination of his cervical spine suggests a disc bulge with osteophytes at C5-6 (Exhibit 5F), and a concurrent MRI examination of his lumbar spine suggests discogenic disease at L4-5 and L5-S1, as well as spinal stenosis (Exhibit 8F).

Additionally, the claimant's hypertension has not resulted in significant end organ damage. Although the claimant's condition has not been well-controlled at times, the treatment record does not establish that the claimant has had symptoms which would significantly interfere with sustained work activity at a medium level of exertion. At a minimum, the claimant has not been hospitalized for severe complications of hypertension. Further, the treatment record does not reflect medication side effects which adversely affect the claimant's ability to function.

See Next Page



4. **The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

5. **After careful consideration of the entire record, the undersigned finds that the claimant has had a residual functional capacity to perform the full range of medium work.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) describes the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

See Next Page



6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

In the report of the December 2005 internal medicine consultative examination, the examiner describes the claimant's residual functional capacity as follows: able to lift 25 pounds frequently and 50 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; and able to sit six hours in an eight-hour workday (Exhibit 2F/3).

This opinion seems well-supported by the overall record and is therefore adopted.

By contrast, in an assessment dated February 2007, a clinician describes the claimant's residual functional capacity in terms consistent with less than a full range of even sedentary level work, including the following: able to stand and/or walk one hour total in an eight-hour workday; able to sit three hours total in an eight-hour workday; able to lift no more than 10 pounds; unable to perform any reaching, handling, and feeling activities; unable to climb or crawl; and able to perform only occasional stooping, crouching, and kneeling (Exhibit 4F).

However, the clinician seems to uncritically endorse the claimant's subjective complaints. At a minimum, the medical evidence of record does not document impairment precluding manipulative activities. And a restriction to lifting no more than 10 pounds seems significantly inconsistent with the scant objective signs and findings shown in the record. Thus, this opinion is rejected.

At the March 2007 hearing, moreover, the claimant testified that he stopped working in 2003 not because of his physical condition but because his place of employment shut down. Perhaps more strikingly, he specifically testified that if his employer had not closed, he would have continued working there and that his plan was not to stop working until 2005.

The record also does not show that the claimant has consistently required particularly strong medication for pain. To the contrary, in the report of the December 2005 consultative examination, the claimant alleges that he uses no pain medication except aspirin (Exhibit 2F/1-2). Similarly, in his medications statement dated February 2007, he includes no medication for pain except Naproxen (Exhibit 7E), a non-steroidal anti-inflammatory pain medication. Such circumstances cast doubt upon the claimant's complaints of markedly limiting pain. In particular, the claimant testified at the March 2007 hearing that his worst pain would be a "9" on a scale of "1" to "10," an allegation apparently inconsistent with his medication requirements.

Also doubtful, the claimant testified that he had not worked subsequent to his alleged onset date. Nevertheless, his earnings record shows income of $79,518 in 2005 (Exhibit 3D/2), although the claimant testified that he had filed his taxes jointly with his wife. But he also admitted that he had assisted her in her business, albeit only for an hour a day. And he testified that after his

See Next Page





employer shut down, he tried to find other work, a circumstance indicative of his confidence in his ability to work subsequent to his alleged onset date.

6. **The claimant has been capable of performing his past relevant work (20 CFR 404.1565).**

The claimant's past relevant work involved loading and assembling batteries, as well as some supervisory tasks. In any event, the <u>Dictionary of Occupational Titles</u> describes the occupation of battery assembler as light, semi-skilled work (D.O.T. 727.684-010, SVP: 4) and describes the occupation of warehouse worker as medium, unskilled work (D.O.T. 922.687-058, SVP: 2). Similarly, at the hearing, the claimant described the exertional requirements of his past relevant work in terms essentially consistent with medium work. In consideration of the residual functional capacity assessed herein, the claimant is thus found to have retained the ability to perform his past relevant work.

7. **The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2005 through the date of this decision (20 CFR 404.1520(f)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on September 8, 2005, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

_____
Howard K. Treblin
Administrative Law Judge

JUL 2 6 2007
Date

